BOTSFORD LUMBER COMPANY v. STATE OF MINNESOTA AND OTHERS.[1]

February 17, 1933.

No. 29,279.

[1]Reported in 246 N. W. 902.

*George F. Gage,* for appellant.

A brief was filed on behalf of the state by *Henry N. Benson,* former Attorney General, and *H. M. Feroe,* former Assistant Attorney General.

Upon hearing of the case there was an appearance and argument on behalf of the state by *Harry H. Peterson,* Attorney General.

WILSON, CHIEF JUSTICE.

Plaintiff appealed from an order sustaining a demurrer to its complaint on the ground that it did not state facts sufficient to constitute a cause of action. The state is made a defendant under G. S. 1923, § 6033, as amended, 1 Mason, 1927, id. through the agency of its department of rural credit.

The state held a $11,000 mortgage on a 160-acre farm owned by John W. Svoboda, who gave a second mortgage to John G. Svoboda for $8,000. The owner, John W. Svoboda, through flagrantly fraudulent representations as to the character and value of the farm, the number and character of the buildings thereon, and the amount of encumbrance on the farm, induced plaintiff to sell to him lumber and building material at the agreed price of $1,143.75 for the construction thereon of a hip-roofed barn 34 x 50. We do not discuss

in detail these representations. Fraud is conceded. The particulars thereof are not here important. It is sufficient to say that it existed and that plaintiff relied thereon. Plaintiff furnished the material, and the owner completed the barn.

After the barn was constructed plaintiff discovered the fraud, and the owner admitted in writing having committed the fraud and authorized plaintiff to remove the barn from the farm. The owner of the second mortgage, upon being advised of such fraud, also consented in writing to plaintiff's removal of the barn. The state resisted the removal.

The allegations are that if the farm had been as represented it would have been worth $15,000 with but $10,000 encumbrance thereon; that said premises were in fact not worth more than $8,000; that there were in fact liens in excess of $20,000 thereon and that the owner was insolvent; and that the removal of the barn would in no way injure the real estate in question or depreciate the value thereof, as such value existed immediately preceding the erection of the barn. The claim is that the land was not then worth as much as the first mortgage of $11,000. The state, the owner of the first mortgage, was of course in no way a party to the fraud and did not learn of the existence of the barn until long after it was constructed.

Plaintiff contends that such fraud and the admission thereof constitutes an implied agreement between plaintiff and the owner that the barn should not become a part of the land, but that it should remain a chattel or personal property, and is subject to removal at the will of the plaintiff.

It is clear that both the plaintiff and the owner of the farm intended that this barn was to become a part of the realty and be a permanent improvement thereon. The character of the structure and the fact that it was on a farm makes a prima facie case therefor. Anything built on the ground to stay belongs to the ground and becomes a part thereof. It is only when there is a special agreement that it is to be otherwise that the building can be successfully claimed to be personal property. Merchants Nat. Bank v.

Stanton, 55 Minn. 211, 56 N. W. 821, 43 A. S. R. 491. Here there was no such special agreement at least until long after the barn had become permanently attached to the land. Plaintiff undertakes to substitute fraud for such an agreement, and says that because of such fraud there was an implied contract that the barn was to be personalty and not realty.

Plaintiff sold the material for the definite purpose of its being used for the construction of the barn. It knew the plan and co-operated therein. The owner's intent was obvious. The plan of the construction of the barn upon a substantial concrete foundation was effectuated. There was then no thought that the occasion would ever arise wherein it might be claimed that the barn was personalty. Upon its completion it was characteristically an immovable thing.

What a man does fraudulently he does in vain; and, as to him, once a fraud always a fraud. Fraud ought not to benefit any person. But the state knew nothing of the fraud until long after its commission. It was not put in any position where it was charged with a duty to speak and advise plaintiff as to the truth.

All the essential elements to constitute an annexation of the barn to the farm as a permanent improvement were present. Such a building in itself on a farm would seem sufficient in the absence of any special agreement. But here we have the physical annexation, the adaptation of the barn to the use of the land as a farm, and the obvious intent of the parties to make the barn a part of the farm. The circumstances preclude any implication that the barn was not to continue as a permanent improvement.

The state does not claim benefits from the fraud. It claims certain legal consequences from the transaction which was tainted by fraud. Fraud does not change the character of the barn nor change the circumstances under which it became a part of the land. That result was not directly accomplished by the fraud, but in spite of it. The annexation made under such definite intention completed the union between the structure and the ground. The particular fraud could not undo the merger; it was complete. Upon such completion the barn, having become a part of the land, inci-

dentally became subject to the first mortgage. In the absence of facts and circumstances constituting estoppel, the state has a legal right to insist that the barn thus reduced to realty may not be removed. Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744, 53 Am. R. 1; Coleman v. Stearns Mfg. Co. 38 Mich. 30; 6 R. C. L. 686; 1 Jones, Mortgages (8 ed.) § 538. Under such circumstances the law operates to the advantage of the mortgagee in the first mortgage; but it is not because of any act on its part. The state asks no affirmative relief. The deceiving of one person does not afford an action to another. Nor does it make another innocent person suffer the loss of his legal rights because of the wrong of the wrongdoer or because of the credulity of the wronged. The simple fact is that the circumstances made the barn a part of the land by operation of law. It thereby became a part of the premises described in the mortgage, and neither the fraud nor the subsequent agreement between the plaintiff and the owner could change this result or relieve the barn from being subject to the mortgage.

We are of the opinion that the fraud involved, whatever the effect as between the parties to it, does not as to the mortgagee constitute an implied contract to the effect that the building material in the barn is personal property. It follows that the complaint does not state facts sufficient to constitute a cause of action.

Affirmed.